**Menderim BIBOSKI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 09–1031.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 12, 2010.

Opinion filed: Jan. 14, 2010.

Melvin R. Solomon, Esq., Parsekian & Solomon, Hackensack, NJ, for Petitioner.

Thomas W. Hussey, Esq., Daniel I. Smulow, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, Michael B. Mukasey, Esq., Debevoise & Plimpton, New York, NY, for Attorney General of the United States.

Before: Chief Judge SCIRICA, SMITH and WEIS, Circuit Judges.

## OPINION

### PER CURIAM.

Petitioner Menderim Biboski is an ethnic Albanian and a citizen of Macedonia. He petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming a decision of the Immigration Judge ("IJ") denying his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). For the following reasons, we will deny Biboski's petition for review.

## I.

Biboski entered the United States and filed an affirmative application for asylum and related relief in April 2001. He claimed that he had been persecuted in Macedonia due to his Albanian ethnicity and due to his and his father's activities with the Albanian Democratic Party ("PPD"). On June 14, 2001, Biboski was charged as removable under 8 U.S.C. § 1182(a)(6)(A)(i).

Biboski's claim of past persecution was based in large part on two incidents that occurred immediately before he came to the United States. At his removal proceedings, he asserted that, on March 30, 2001, he participated in a large demonstration organized by the PPD to protest the alleged killing of three people who were being held in police custody. Biboski testified that 2,000–3,000 people participated in the demonstration and that the police attempted to disperse the protestors by shooting guns in their direction. He also stated that the police were beating people, including him, who were located at the front of the protesters' line. Biboski was able to escape, and testified that he did not seek medical attention for his injuries.

Then, on April 2, 2001, five police officers came to Biboski's house and held a gun to his head while they beat his parents. Biboski testified that the police officers sought to arrest him and his brother primarily because they had not responded to the conscription notices that they had received. He also contended that they wanted to arrest him due to his participation in the March 30th protest. Biboski managed to escape without injury and entered the nearby forest and walked to the

next village. The next day, he entered Albania and from there traveled to the United States.

Biboski submitted an affidavit from his father in support of his claims. The affidavit does not, however, corroborate Biboski's assertion that the police sought to arrest him because of his or his father's activities with the PPD, as it states that the police "came physically looking for our two sons ... to take them to complete their military duties. They would enter our homes looking for weapons and would physically beat us repeatedly." According to Biboski, the police routinely visit his parents looking for him, and he believes that if he returns to Macedonia, he will be arrested or killed because of his participation in the 2001 protest and his failure to serve in the military.

The IJ denied all Biboski's claims, determining that the "alleged acts committed against [him] do not fit within the meaning of persecution." The IJ found that Biboski suffered no critical injuries from the March 30, 2001 beating and noted that he did not claim that he was injured during the April 2nd incident. As such, the acts were not sufficiently "severe to amount to persecution." The IJ also concluded that, even if the incidents were sufficiently severe and frequent, Biboski had not established that his alleged persecutors were motivated by his ethnicity or political opinion, imputed or otherwise. Thus, he could not qualify as a refugee. *See* 8 U.S.C. § 1231(b)(3)(A); *Gomez–Zuluaga v. Att'y Gen.*, 527 F.3d 330, 344–45 (3d Cir.2008) (explaining that one may qualify for asylum based on an imputed political opinion). As to Biboski's fear of future persecution, the IJ explained that he had not submitted objective evidence corroborating his PPD membership, that the United States Department of State country reports did not contain conclusive findings that PPD members were systematically targeted, and

that possible arrest for failing to enlist in the army "does not give rise to a well-founded fear of future persecution."

The BIA affirmed the IJ's decision, agreeing that "the two described incidents do not amount to persecution based on a protected ground." Because Biboski did not establish that he was subjected to past persecution, the BIA did not apply the presumption that Biboski would more likely than not be persecuted if he returned to Macedonia and found that he had not "set forth any specific facts" supporting such a claim. The BIA then determined that because Biboski did not establish his eligibility for asylum, he necessarily failed to satisfy the higher standard required for withholding of removal, and had not presented any credible evidence establishing that someone in his situation would be tortured in Macedonia.

Through counsel, Biboski now petitions for review of the BIA's final order of removal.

## II

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). The BIA's decision is reviewed under the substantial evidence standard and will be upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir.2003) (internal citation omitted). Here, the BIA's conclusions concerning Biboski's failure to meet his burden of proof regarding past persecution or a well-founded fear of future persecution are supported by substantial evidence. *See Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir.2003).

■ The BIA determined that neither of the two-described incidents, considered alone or cumulatively, amounted to persecution. It explained that, while Biboski

may have been beaten by police officers during the March 2001 demonstration, he admitted that they had not specifically targeted him or arrested him, and that he did not receive substantial injuries requiring medical attention. The BIA thus affirmed the IJ's finding that the harm that Biboski suffered was not so severe as to rise to the level of persecution. *See Lie v. Ashcroft,* 396 F.3d 530, 536 (3d Cir.2005); *cf. Voci v. Gonzales,* 409 F.3d 607, 615 (3d Cir.2005) (finding that multiple severe beatings and intimidation tactics rose to the level of persecution).

■ As to the April 2001 incident at Biboski's home, the BIA agreed that Biboski had not established that the alleged persecutors were motivated by one of the statutorily-protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A); *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Although Biboski testified that the police officers' actions were, at least in part, based on his and his father's activities with the PPD, his father's affidavit does not support this contention. *See Elias–Zacarias,* 502 U.S. at 483–84, 112 S.Ct. 812 (requiring at least some proof that the persecutor was motivated in part by the petitioner's protected status). Further, as the BIA determined, even if the police sought to arrest Biboski for failing to comply with his military duties, sovereign nations have the right to enforce their conscription laws, and "penalties for evasion are not considered persecution." *Lukwago v. Ashcroft,* 329 F.3d 157, 168–69 (3d Cir.2003) (internal citation and quotation omitted). Exceptions arise only in rare cases where, on account of one of the five statutorily-protected grounds, a petitioner faces disproportionately severe punishment. *Kibinda v. Att'y Gen.,* 477 F.3d 113, 121 (3d Cir.2007). Here, while the Macedonian police officers' tactics may have been deplorable, Biboski has not shown that his treatment was particularly harsh due to his political opinion—imputed or otherwise—or his Albanian ethnicity. The BIA's decision that Biboski did not establish past persecution is thus supported by substantial evidence.

As to Biboski's fear of future harm, the BIA properly agreed with the IJ that Biboski did not establish a likelihood of future persecution based on his political opinion or ethnicity—or that a pattern or practice of persecution exists against ethnic-Albanians or PPD members. *See Lie,* 396 F.3d at 536. And, although Biboski may be conscripted into the military or prosecuted for failing to complete his military duties, fear of prosecution for violating "fairly administered laws" generally does not qualify one as a refugee unless the punishment is severe and is motivated by one of the statutorily-enumerated factors. *See Shardar v. Ashcroft,* 382 F.3d 318, 323 (3d Cir.2004). Biboski has not demonstrated that such punishment is likely if he returns to Macedonia.

In sum, the evidence does not compel us to overturn the BIA's decision to deny the petitioner's claims, and for the foregoing reasons, we deny Biboski's petition for review.